UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

LISA D. KULLMAN,

    Plaintiff,

v.                                              Case No. 8:13-cv-00225-T-24MAP

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

    Defendant.
_____/

**REPORT AND RECOMMENDATION**

Pursuant to 42 U.S.C. § 405(g), Plaintiff seeks this Court's review of the Commissioner's decision denying her claim for disability insurance benefits ("DIB"). Plaintiff argues that the Administrative Law Judge ("ALJ") erred when evaluating the medical opinions of Plaintiff's treating physician, Dr. Eugenia Rullan ("Dr. Rullan"), when assessing Plaintiff's credibility, and by relying on hypothetical questioning to the vocational expert ("VE") that is not supported by substantial evidence. Because I find the ALJ failed to properly evaluate the treating physician's opinion, I recommend the matter be remanded for further administrative proceedings.[1]

*A. Background*

Plaintiff was fifty years old at the latest administrative hearing, has a bachelor of arts degree, a masters degree in public administration, and has previous work experience as a massage therapist, assistant director at an adult center, front desk clerk, sales person, and customer service representative at a bank (R. 942, 1233-34, 1236). She initially filed for DIB on July 23, 2003,

---

[1] The matter is referred to me for a report and recommendation pursuant to Local Rule 6.01(c)(21).

alleging disability beginning on September 2, 2000, due to fatigue, pain in the neck and lower back, hands, thumbs, wrists, right foot, ankle, knee, leg, and problems with depression, anxiety, asthma, and sleeping (R. 932, 942, 1243-44). And, after three unfavorable decisions, three remands by the Appeals Council, and four administrative hearings, the ALJ, once again, issued an unfavorable decision denying her claim for DIB (R. 19-32, 35-37, 41-50, 819-829, 832-858). In this most recent decision, the ALJ found at step two of the sequential analysis that Plaintiff suffered from severe impairments of degenerative disc disease of the lumbar and cervical sections of the spine, obesity, rheumatoid arthritis, and fibromyalgia; however, at step three concluded none qualified as a listed impairment in C.F.R. Part 404, Subpart P, Appendix 1 (R. 21-24). At step four, he assessed Plaintiff retained the functional capacity to perform light work, except that Plaintiff required a sit/stand option and could only perform work at the unskilled level, which prevented her from performing her past relevant work (R. 24, 30). At step five of the analysis, and with the assistance of a vocational expert, the ALJ found Plaintiff could make a successful adjustment to other work at the light level, and in the alternative, at the sedentary level (R. 30-31). Consequently, the ALJ found Plaintiff was not disabled (R. 31). Plaintiff requested review, and the Appeals Council, after reviewing additional information, denied Plaintiff's request for review (R. 9). Plaintiff, who has exhausted her administrative remedies, filed this action.

   *B. Standard of Review*

To be entitled to disability insurance benefits, a claimant must be unable to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. *See* 42 U.S.C. § 423(d)(1)(A). A "physical or

mental impairment" is an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. *See* 42 U.S.C. § 423(d)(3).

The Social Security Administration, in order to regularize the adjudicative process, promulgated the detailed regulations that are currently in effect. These regulations establish a "sequential evaluation process" to determine whether a claimant is disabled. *See* 20 C.F.R. § 404.1520. If an individual is found disabled at any point in the sequential review, further inquiry is unnecessary. 20 C.F.R. § 404.1520(a). Under this process, the Commissioner must determine, in sequence, the following: (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment(s) (i.e., one that significantly limits his ability to perform work-related functions); (3) whether the severe impairment meets or equals the medical criteria of Appendix 1, 20 C.F.R. Part 404, Subpart P; (4) whether the claimant can perform his past relevant work; and (5) if the claimant cannot perform the tasks required of his prior work, the ALJ must decide if the claimant can do other work in the national economy in view of his or her age, education, and work experience. 20 C.F.R. § 404.1520. A claimant is entitled to benefits only if unable to perform other work. *See Bowen v. Yuckert,* 482 U.S. 137 (1987); 20 C.F.R. § 404.1520(f).

In reviewing the ALJ's findings, this Court must ask if substantial evidence supports those findings. *See* 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389 (1971). The ALJ's factual findings are conclusive if "substantial evidence" consisting of "relevant evidence as a reasonable person would accept as adequate to support a conclusion" exists. *See* 42 U.S.C. § 405(g); *Keeton v. Dept. of Health and Human Servs.*, 21 F.3d 1064 (11th Cir. 1994). The Court may not reweigh the evidence or substitute its own judgment for that of the ALJ even if it finds the evidence

preponderates against the ALJ's decision. *See Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). Further, the Commissioner's failure to apply the correct law, or to give the reviewing court sufficient reasoning for determining that he/she has conducted the proper legal analysis, mandates reversal. *Keeton*, 21 F.3d at 1066; *Jamison v. Bowen*, 814 F.2d 585 (11th Cir. 1987).

    *C. Discussion*

        *1. evaluation of Dr. Rullan's medical opinions*

Plaintiff first argues the ALJ failed to properly consider the medical opinions of Plaintiff's treating physician, Dr. Rullan. Specifically, Plaintiff asserts the ALJ failed to articulate good cause in rejecting Dr. Rullan's opinion. In response, the Commissioner maintains that the ALJ properly rejected Dr. Rullan's opinion as it was inconsistent with Dr. Rullan's own medical records and unsupported by the record medical evidence.

To determine the weight given to a medical opinion, the ALJ must consider a variety of factors including "the examining relationship, the treatment relationship, whether an opinion is well-supported, whether an opinion is consistent with the record as a whole, and the area of the doctor's specialization." *Middleton v. Astrue*, No. 8:11-cv-303-T-17AEP, 2012 WL 4017471, at *6 (M.D. Fla. July 27, 2012) (citing 20 C.F.R. § 404.1527(c)). The testimony or opinion of a treating physician must be given substantial or considerable weight unless there is "good cause" not to. *Lewis v. Callaghan*, 125 F.3d 1436, 1440 (11th Cir. 1997). "Good cause" exists where (1) the treating physician's opinion was not bolstered by the evidence; (2) the evidence supported a contrary finding; or (3) the treating physician's opinion was conclusory or inconsistent with his own medical records. *Id.* The ALJ must also clearly articulate the reasons for giving less weight to the treating physician's opinion, and failure to do so constitutes reversible error. *Id.*

Dr. Rullan is a specialist in rheumatology who treated Plaintiff for rheumatoid arthritis and fibromyalgia for several years. In December 2002, Dr. Rullan noted Plaintiff complaints of ongoing muscle pain and severe fatigue due to Plaintiff's rheumatoid arthritis and fibromyalgia (R. 617). She also noted that Plaintiff had a significant medical history for rheumatoid arthritis, but that it has recently gotten better since Plaintiff's pregnancy; however, her arthritis was expected to flare up again after delivery and that medications have not helped significantly (*Id.*) On examination, Dr. Rullan observed that Plaintiff's wrists were mildly swollen as were her proximal interphalangeal joints ("PIPs") and metacarpophalangeal joints ("MCPs") (*Id.*). Plaintiff also had multiple tender points (*Id.*). Dr. Rullan indicated that Plaintiff's rheumatoid arthritis would need to be taken care of after delivery of Plaintiff's baby because most of the medications used to treat her condition could cause damage to the fetus (R. 618). She opined that as of December 2002, the Plaintiff could continuously sit for only thirty minutes, must alternate postures by walking for about fifteen minutes, and could only stand or walk about fifteen minutes before having to lie down or recline for two hours (R. 621-22). In total, Plaintiff could cumulatively sit for only two hours in an eight hour day and stand or walk only one hour in an eight hour day (R. 622). Plaintiff could also only lift one to five pounds occasionally (*Id.*). Dr. Rullan stated she based these considerations on Plaintiff's x-rays and blood tests (R. 624). The vocational expert opined that if the ALJ credited Dr. Rullan's opinion, Plaintiff would not be able to perform any work (R. 1260). The ALJ, however, did not find Rullan's opinion credible.

In giving little weight to Dr. Rullan's opinion, the ALJ stated that it appeared Dr. Rullan was relying heavily on what Plaintiff was telling her during Plaintiff's office appointments without considering the objective evidence, and the claimant's treatment was not consistent with Dr. Rullan's

5

opinions (R. 29). Instead, the ALJ gave greater weight to the consultative examiner, Dr. Patrick A. Ijewere ("Dr. Ijewere"), who only examined Plaintiff once, rationalizing that Dr. Ijewere's opinion was more consistent with objective imaging of the claimant's extremities and deserved more weight (R. 28). The ALJ also rejected Dr. Rullan's opinion because it was not consistent with Plaintiff's activities of daily living, which the ALJ found included undergoing a full term pregnancy, taking a quilting class, and helping her children with their schoolwork (R. 29).

The Court is unconvinced the ALJ articulated the requisite good cause in rejecting Dr. Rullan's opinion. This is especially true, given that the ALJ appears to have rejected Dr. Rullan's opinions because she relied on Plaintiff's subjective complaints rather than objective evidence. Because the ALJ found Plaintiff suffered from a severe impairment of fibromyalgia, the ALJ should have also recognized that fibromyalgia often lacks objective evidence upon which a physician can evaluate Plaintiff's level of pain, and "as a consequence, a treating physician's testimony can be particularly valuable." *Johnson v. Astrue*, No. CA 11-0460-C, 2012 WL 1565644, at *12 (S.D. Ala. May 2, 2012); *see also Moore v. Barnhart* , 405 F.3d 1208, 1211-12 (11th Cir. 2005)(reversing ALJ's decision to discount Plaintiff's credibility due to lack of objective evidence of impairment and noting that a "treating physician's testimony can be particularly valuable in fibromyalgia cases, where objective evidence is often absent"); *Somogy v. Comm'r of Soc. Sec.*, 366 Fed. App'x. 56, 64 (11th Cir. 2010)(in cases of fibromyalgia, lack of objective clinical findings is insufficient to support an ALJ's rejection of a treating physician's opinion); *Sarchet v. Chater*, 78 F.3d 305, 306 (7th Cir.1996)("[Fibromyalgia's] causes are unknown, there is no cure, and, greatest importance to disability law, its symptoms are entirely subjective. … Thus, a treating physician's determination that a patient is disabled due to fibromyalgia is even more valuable because there are no objective

signs of severity and the physician must interpret the data for the reader"). What is more is that despite the ALJ's statements to the contrary, Dr. Rullan noted in her progress reports objective evidence to support Plaintiff's allegations of pain. Fibromyalgia is "a chronic disorder characterized by widespread pain tenderness, and stiffness of muscles and associated connective tissue structures that is typically accompanied by fatigue, headache, and sleep disturbances." *Fibromyalgia Definition*, Merriam-Webster's Medical Dictionary (2013), http://www2.merriam-webster.com/cgi-bin/mwmedsamp (last visited November 5, 2013). As stated above, Dr. Rullan observed that Plaintiff suffered from joint swelling and that Plaintiff had multiple tender points (*Id.*). Dr. Rullan also found that on several occasions Plaintiff showed signs of synovitis[2] in her MCPs, PIPs, wrists, arms, and elbow (R. 586, 589, 602, 606, 610, 612, 616). She also found that Plaintiff had fatigue and pain with a lot of trouble sleeping (R. 615-616). Dr. Rullan's treatment records further reported that the difficulty with Plaintiff's condition was either moderate or complex and her global assessment of Plaintiff's condition was either at most stable or was deteriorating (610, 612, 616). Further, I agree with the Commissioner that Dr. Rullan's treatment results revealed some positive results at Plaintiff's office visits including that at certain visits Plaintiff's neck was normal, that she had no synovitis, and that she had normal muscle strength (R. 585-86). Notwithstanding, the Commissioner fails to address that in those same records, Dr. Rullan also found Plaintiff was positive for spinal pain, radicular swelling, fatigue, neuropathy, and that Plaintiff was still in a significant amount of pain (R. 585-86). Thus, Dr. Rullan recommended bed rest (R. 586). It is not uncommon for patients with fibromyalgia and rheumatoid arthritis to

---

[2] Synovitis is the "infammation of a synovial membrane usually with pain and swelling of the joint." *Synovitis*, Merriam-Webster's Medical Dictionary (2013), http://www2.merriam-webster.com/cgi-bin/mwmedsamp (last visited November 5, 2013).

have pain that waxes and wanes. *See Fibromyalgia*, the Arthritis Foundation (2013), http://www.arthritis.org/conditions-treatments/disease-center/fibromyalgia-fms/ (last visited November 7, 2013); *Rheumatoid Arthritis,* the Arthritis Foundation (2013), http://www.arthritis.org/conditions-treatments/disease-center/rheumatoid-arthritis/ (last vitited November 7, 2013). At times people suffering from these conditions can often look healthy and symptoms can change daily (*Id.*).

I further find that Dr. Rullan's findings are supported by several of Plaintiff's treating and examining physicians who also recognized Dr. Rullan's diagnosis of fibromyalgia and rheumatoid arthritis and noted Plaintiff's consistent complaints of disabling pain and fatigue (R. 326-27, 350, 370-71, 405, 415, 567). In February 2002, Plaintiff saw Dr. Jeffrey Farmer ("Dr. Farmer"), an examining physician. At that appointment, Plaintiff complained of severe swelling in her right ankle, knee swelling, and knee pain (R. 325). Dr. Farmer identified that Plaintiff had a weakly positive rheumatoid factor with no apparent joint effusion or erythema in other joints; however, Plaintiff's right ankle, especially the lateral malleolus, was edematous (*Id.*). Additionally, Plaintiff resisted all passive attempts at flexion or extension of her right ankle (*Id.*). Dr. Farmer diagnosed Plaintiff with acute right ankle effusion, with a possibility of septic joints (although, he found this unlikely), likely rheumatoid arthritis, and noted that Plaintiff's blood tests revealed a raised erythrocyte sedimentation rate (R. 326-27).

Dr. Barbara Wagner, another examining physician, also noted Plaintiff's right ankle pain and swelling, that Plaintiff's blood pressure was slightly elevated due to the pain, that she had pain with flexion and extension, and the most painful movement is eversion (R. 335-36). Dr. Wagner stated that although Plaintiff's pain was fairly well controlled with medication while Plaintiff was resting,

Plaintiff was unable to bear any weight or ambulate (R. 334-36). In the end, Dr. Wagner assessed Plaintiff suffered from migratory polyarthritis with a history of chronic fatigue, neck pain with a history of cervical disk disease and intermittent left cervical radiculopathy, chronic back pain, allergies, and asthma (R. 341).

One of Plaintiff's treating physician's, Dr. Richard Brown ("Dr. Brown"), opined that due to Plaintiff's arthritis, Plaintiff was unable to be gainfully employed (R. 350). The ALJ noted this opinion; however, he gave little weight to Dr. Brown's opinion finding the statement ambiguous, conclusory, a decision reserved to the Commissioner, and inconsistent with Dr. Brown's treatment notes. It is true that whether or not a Plaintiff is unable to work or is disabled is a decision reserved to the Commissioner. But, such opinion "must not be ignored, and the Commissioner must examine the entire record to determine whether such opinion[] [is] supported by the record." *Carnley v. Astrue*, No. 5:09cv6-RH/MD, 2010 WL 940988, at *5 (N.D. Fla. Mar. 13, 2010) (*citing* SSR 96-5p). As such, despite what appears to be some positive findings concerning Plaintiff's impairments in Dr. Brown's treatment records, they lend support to Dr. Rullan's assessment of Plaintiff's functional capacity. In fact, Dr. Brown's records also revealed that Plaintiff's MCPs were tender, her PIP and DIP joints showed mild osteoarthritis, her wrists, shoulders, cervical and lumbar spine, and feet were all symptomatic, and her knees were tender (R. 349). He observed that while Plaintiff did get some improvement with medication, Plaintiff still suffered from many symptoms in her hands, shoulders, neck, knees, and back (R. 349, 351, 356, 358). Dr. Brown assessed Plaintiff had probable rheumatoid arthritis and chronic neck and back pain (*Id.*).

Furthermore, Dr. Ijewere, whose opinion the ALJ gave great weight, stated that despite not finding swelling, pain, or signs of inflammation in Plaintiff's major joints at the single office visit

9

in which he saw Plaintiff, the ALJ failed to note that Dr. Ijewere also found that Plaintiff had significant fatigue and mild spinal tenderness (R. 370-71). These symptoms are consistent with Plaintiff's complaints and Dr. Rullan's treatment notes and assessment of fibromyalgia. An ALJ may not arbitrarily reject or ignore uncontroverted medical evidence. *McCruter v. Bowen,* 791 F.2d 1544, 1548 (11th Cir. 1986) (administrative review must be of the entire record; accordingly, ALJ cannot point to evidence that supports the decision but disregard other contrary evidence); *Goodley v. Harris,* 608 F.2d 234, 236-37 (5th Cir. 1979) (ALJ may not choose to "arbitrarily ignore" uncontroverted medical testimony). Therefore, on remand, the ALJ should consider these medical opinions in light of Dr. Rullan's assessment and properly address Dr. Rullan's diagnosis of fibromyalgia.

I also find the ALJ erred by rejecting Dr. Rullan's opinions because Dr. Rullan's opinions were inconsistent with Plaintiff's limited daily activities. The ALJ found Plaintiff's daily activities included undergoing a full term pregnancy, taking a quilting class, and helping her children with their schoolwork. These limited activities do not support rejection of Dr. Rullan's medical opinion. *See Lewis*, 125 F.3d at 1441 (participation in activities of short duration, such as housework does not disqualify a claimant from disability); *Kahle v. Comm'r of Soc. Sec.*, 845 F. Supp. 2d 1262, 1272-73 (M.D. Fla. 2012) (citing *Venette v. Apfel,* 14 F.Supp.2d 1307, 1314 (S.D. Fla.1998) (a claimant's testimony that she can do some housework, light cooking, and light grocery shopping are minimal daily activities and do not constitute good cause to reject a medical opinion). First, I find the ALJ erred when rejecting Dr. Rullan's opinion because of Plaintiff's pregnancy. I cannot locate any authority that supports the proposition that undergoing a full term pregnancy is evidence that Plaintiff was not suffering from an impairment, and I cannot find any authority supporting the

proposition that undergoing a full term pregnancy is an activity of daily living or a valid reason to reject a treating physician's opinion that Plaintiff was in disabling pain. Indeed, it appears the opposite is true. *Dennis v. Astrue*, 655 F. Supp. 2d 746, 756 (W.D. Ken. 2009) (finding it was error to reject Plaintiff's subjective complaints of pain due to Plaintiff's ability to have three successful pregnancies). As the Plaintiff points out, there could be many valid reasons why Plaintiff would have undergone a pregnancy despite her impairments. Furthermore, Plaintiff's ability to help her kids with their homework for an hour if needed or ability to take and complete one beginners quilting class is not evidence of significant daily activities. Thus, I find on remand the ALJ should reconsider Dr. Rullan's opinions by properly evaluating Plaintiff's activities of daily living.

    *2. Plaintiff's remaining allegations*

Because I find remand is appropriate due to the ALJ's failure to properly evaluate Dr. Rullan's opinion, it is unnecessary to address the Plaintiff's remaining contentions that the ALJ erred in evaluating Plaintiff's credibility and erred in relying on the VE's hypothetical. Although, in terms of evaluating Plaintiff's credibility, as stated previously, the ALJ should reconsider Plaintiff's subjective complaints of pain and activities of daily living without reference to Plaintiff's pregnancy.

    *D. Conclusion*

For the reasons previously discussed, the Court recommends that the ALJ's decision be reversed and the case be remanded for further consideration of Dr. Rullan's opinions consistent with this Report and Recommendation. Accordingly, it is hereby

    RECOMMENDED:

    1.    The decision of the Commissioner be REVERSED and the case REMANDED for further administrative proceedings consistent with this Report and Recommendation;

and

2. The Clerk of Court be directed to enter final judgment in favor of Plaintiff.

IT IS SO REPORTED in Tampa, Florida on November 12, 2013.

_____
MARK A. PIZZO
UNITED STATES MAGISTRATE JUDGE

**<u>NOTICE TO PARTIES</u>**

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen (14) days from the date of its service shall bar an aggrieved party from attacking the factual findings on appeal. 28 U.S.C. § 636(b)(1).

cc: The Honorable Susan C. Bucklew